[No. 15015.    Department Two.    March 28, 1919.]

# E. V. WINTERMOTE, *Respondent*, v. UNION LUMBER COMPANY, *Appellant*.[1]

LOGS AND LOGGING (55) — SALES OF LUMBER — CONTRACT — WHEN TITLE PASSES. A contract for the sale of a certain quantity of lumber, referred to as piled at the seller's mill, although expressing the intention to pass the title, does not completely pass title as to a deficiency in the quantity which was not yet manufactured or set aside so that the buyer could assume control over it.

SAME. In such a case, the fact that the buyer took out insurance upon the whole amount contracted to be sold does not show that such amount was actually set aside or marked or completely manufactured so as to pass title.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered December 17, 1917, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Troy & Sturdevant*, for appellant.

*F. D. Oakley*, for respondent.

PARKER, J.—The plaintiff, Wintermote, commenced this action in the superior court for Thurston county, as assignee of McPhee & McGinnity Company, seeking recovery of $2,069.30, claimed to be the value of the balance of lumber, according to contract price, which was to be delivered to McPhee & McGinnity Company by the defendant, Union Lumber Company, under a contract for the sale thereof, entered into between them, which lumber was fully paid for by McPhee & McGinnity Company, but not delivered by the lumber company as agreed upon. Trial before the court without a jury resulted in findings and judgment in favor of Wintermote, awarding him recovery of the full

[1]Reported in 179 Pac. 856.

amount claimed, from which the lumber company has appealed to this court.

The whole of the contract here in question, excepting the schedule of dimensions of the lumber attached thereto, reads as follows:

"For and in consideration of Twenty-six thousand four hundred and sixty Dollars ($26,460) to the Union Lumber Company, doing business at Tacoma, Washington, paid by the McPhee & McGinnity Company, doing business at Denver, Colorado, the receipt of which is hereby acknowledged, said Union Lumber Company does hereby sell to said McPhee & McGinnity Company three million feet of No. 1 common fir lumber at the saw mill of the said Union Lumber Company, said lumber to be marked as belonging to said McPhee & McGinnity Company to be shipped by said Union Lumber Company from said saw mill at the rate of 500,000 feet or more, per month, beginning March 1st, 1909, to such points as may be directed by the McPhee & McGinnity Company.

"The Union Lumber Company guarantees and warrants the title to said lumber so sold, and further agrees that the same has been piled and dried and will be shipped in such dimensions as required from time to time by the McPhee & McGinnity Company, the schedule of dimensions of said lumber being hereto attached and marked 'Exhibit A.'

"Dated, Tacoma, Wash., March 4th, 1909.

"Union Lumber Company
"By F. J. Shields, Pres."

It is to be remembered, as we proceed, that McPhee & McGinnity Company did not sign this contract. They did, however, pay in advance the full purchase price of the lumber, as therein stated. Thereafter, during the months of March to November, inclusive, in the year 1909, the lumber so agreed to be furnished was shipped by the lumber company to McPhee & McGinnity Company, save an amount thereof of the value of $2,069.30, measured by the contract price. We note

that the evidence clearly shows that the total contract price was arrived at by computation upon a basis of $9 per thousand feet, and the allowance of two per cent discount, on account of the cash payment of the whole purchase price. So that the determining of the contract price value of the unfurnished portion of the lumber became a simple matter, the amount so unfurnished being clearly shown.

While the contract states that the lumber was then piled at the mill of the lumber company, and was to be marked as belonging to McPhee & McGinnity Company, we think the evidence renders it certain that there was not then an amount of lumber of the kind contracted for completely manufactured, piled at the mill, or on hand there, of sufficient quantity to comply with the contract; but that such lumber was deficient in quantity in at least the amount which the lumber company failed to furnish under the contract, and that at no time was any lumber at the company's mill marked as belonging to McPhee & McGinnity Company. We also think it clear that these provisions of the contract constituted only a statement and a promise on the part of the lumber company, and that McPhee & McGinnity Company depended entirely upon the lumber company as to the truth of the former and the performance of the latter. It is plain that the time for the furnishing of all the lumber contracted for under the contract has long since passed, and that ample demand therefor has been made by McPhee & McGinnity Company.

It is contended in behalf of the lumber company that it cannot in any event be subjected to any recovery other than for the amount of the cost of loading the lumber upon cars at the lumber company's mill. This contention is rested upon the theory that there was a complete passing of title to the whole of the lumber

upon the making of the contract. We think the fallacy of this contention is found in the fact that, while the contract may be regarded as expressing an intention that title should pass upon its making and the marking of the lumber, the title manifestly did not pass, in any event, to the lumber here in question, because it was not then at the mill, and never was set aside or marked as lumber belonging to McPhee & McGinnity Company, so that they could assume control over it.

Some contention is made in support of the theory of the passing of title at the time of the making of the contract, rested upon the assumption that McPhee & McGinnity Company insured the lumber as their own. The evidence is very unsatisfactory upon this question. As we read it, we think it means only that the lumber company insured the whole stock of lumber at its mill; and after the making of this contract, charged the cost of the insurance of three million feet of lumber to Mc-Phee & McGinnity Company, which apparently the latter paid. But plainly this does not show that lumber of the full amount contracted for was actually set aside or marked or even completely manufactured as provided in the contract. It seems plain to us that in no event did title to the unshipped lumber ever pass from the lumber company to McPhee & McGinnity Company, whatever may be said as to when the title to the shipped lumber passed under the contract. This we think disposes of the other questions presented, adverse to the contentions made in the lumber company's behalf.

The judgment is affirmed.

CHADWICK, C. J., FULLERTON, HOLCOMB, and MOUNT, JJ., concur.